IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **TECHNOLOGY FROM HEAVEN UNLIMITED**<br>10216 1/2 Mountair<br>Tugunga, CA 91042,<br><br>and<br><br>**HOPE FOR HOMELESS YOUTH**<br>10216 1/2 Mountair<br>Tugunga, CA 91042,<br><br>   Plaintiff,<br><br>vs.<br><br>**REGAL-ELITE, INC.**<br>8140 Business Way<br>Plain City, OH 43064,<br><br>and<br><br>**PAULG TOYS, LTD.**<br>8140 Business Way<br>Plain City, OH 43064,<br><br>and<br><br>**JEFF HARTMAN,**<br>8689 Craigston Ct.<br>Dublin, OH 43017,<br><br>and<br><br>**PATRICIA HARTMAN**<br>8689 Craigston Ct.<br>Dublin, OH 43017,<br><br>   Defendants. | Case No. _____<br><br>Judge_____ |

## COMPLAINT

### (Demand for Jury Trial Endorsed Herein)

Plaintiffs Technology from Heaven Unlimited and Hope for Homeless Youth (collectively, "Plaintiffs"), for their Complaint against Defendants Regal-Elite, Inc., PaulG Toys, Ltd., Jeff Hartman, and Patricia Hartman (collectively, "Defendants"), state as follows:

### PARTIES, JURISDICTION, & VENUE

1. Plaintiff Technology from Heaven Unlimited ("Technology from Heaven") is a California corporation.

2. Plaintiff Hope for Homeless Youth is a California corporation.

3. Defendant Regal-Elite, Inc. ("Regal") is a dissolved Ohio corporation.

4. Defendant PaulG Toys, Ltd. ("PaulG Toys") is an Ohio limited liability company.

5. Defendant Jeff Hartman is an individual that resides in Ohio. Upon information and belief, at all relevant times, Jeff Hartman controlled both Regal and PaulG Toys.

6. Defendant Patricia Hartman is an individual that resides in Ohio and is the sole shareholder of Regal.

7. This Court has personal jurisdiction over the Defendants because the Defendants are residents of Ohio.

8. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are completely diverse and the amount in controversy exceeds $75,000. Additionally, this Court has subject-matter jurisdiction over Count 3 pursuant to 28 U.S.C. §§ 1131 and 1338(a) and subject-matter jurisdiction over Counts 1-2 and 4-8 pursuant to 28 USC § 1367 because all the claims in this case arise from the same controversy.

9. Venue is proper in this Court under 28 U.S.C. §§ 1391(b)(1) & (2) and Local Rule 82.1 because one or more of the Defendants reside in the Eastern Division of this District and because a substantial part of the events or omissions giving rise to the claims herein occurred in the Eastern Division of this District.

## FACTUAL ALLEGATIONS

10. This case arises from Jeff Hartman's refusal to pay Plaintiffs—two organizations dedicated to improving the lives of homeless, destitute youth in California—for intellectual property licensed to Jeff Hartman and his companies.

11. Hope for Homeless Youth is a Christian outreach and rehabilitation ministry to troubled youth in inner city. Among other things, Hope for Homeless Youth provides room, board, spiritual support, and practical training to troubled youth.

12. One of the main purposes of Technology from Heaven is to raise money by investing and commercially licensing innovative toys and other products and contributing its revenues to Hope for Homeless Youth.

13. The other main purpose of Technology from Heaven is to work together with professional inventors, scientists, engineers, and lawyers to teach troubled inner-city youth how to invent innovative toys and other products and license them to earn revenue.

14. On October 25, 2005, United States Patent No. D510,961 (the "961 Patent") entitled "Object for the Control of a Remote Controlled Toy Through Attitudinal Orientation of the Object" was duly and legally issued to Clayton R. Golliher. Plaintiffs are the current assignees and the assignees during the relevant period of the entire right, title, and interest in the 961 Patent.

15. A true and accurate copy of the 961 Patent is attached hereto as Exhibit A.

16. The claim for the 961 Patent is for the "ornamental design for an object for the control of a remote controlled toy through attitudinal orientation of the object, as shown and described."

17. On April 22, 2008, United States Patent No. 7,362,234 (the "234 Patent") entitled "Controller for Remote Vehicles and Craft and for Virtual Subjects" was duly and legally issued to Clayton R. Golliher. Plaintiffs are the current assignees and the assignees during the relevant period of the entire right, title, and interest in the 234 Patent.

18. A true and accurate copy of the 234 Patent is attached hereto as Exhibit B

19. The five claims for the 234 Patent are stated in Exhibit B and are incorporated herein by reference.

20. In the 2011 time frame, Jeff Hartman approached Clayton Golliher about the possibility of licensing technology developed by Plaintiffs.

21. On March 2, 2011, Jeff Hartman and Technology from Heaven entered into a non-disclosure agreement ("Non-Disclosure Agreement") that prevented Jeff Hartman from improperly using or disseminating the confidential information of the Plaintiffs ("Confidential Information").

22. A true and accurate copy of the Non-Disclosure Agreement is attached hereto as Exhibit C.

23. Subsequently, on September 18, 2011, Technology from Heaven and Regal entered into a license agreement ("License Agreement").

24. A true and accurate copy of the License Agreement is attached hereto as Exhibit D.

25. Under the terms of the License Agreement, Technology from Heaven agreed to license the "Licensed Product" to Regal. License Agreement at § 2.0.

26. The term "Licensed Product" was specifically defined by the License Agreement:

> The Licensed product shall by the RC Glove Controller that gives proportional throttle control via thumb mechanism. Accelerometer/s will give proportional directional control left, right, forward trim adjustments. Directional control is accomplished by titling the hand, i.e., tilt to the left and the helicopter turns to the left. Speed is controlled (rotor speed for lift/height) by the use of the thumb mechanism. It being understood that slight modifications to specific actions resulting controlling different performance responses does not remove any product from payment eligibility, under the terms of this Agreement.

*Id.* at § 4.1.

27. The License Agreement also provided that Technology from Heaven would receive royalties from Regal based on Regal's sales of products based on the Licensed Product. *Id.* at § 4.0.

28. Further, the License Agreement provided for a minimum royalty: $10,000 per concept for the first year, and $40,000 per concept for each year following the first year. *Id.* at § 4.1.

29. Pursuant to the License Agreement, Regal began manufacturing and selling products based on the Licensed Product and on the Confidential Information.

30. Pursuant to the License Agreement, Regal made a minimum royalty payment of $10,000 for the first year of the contract. Regal also made a royalty payment of approximately $1,900 for the third quarter of the 2013 year and a royalty payment of approximately $6,800 for the fourth quarter of the 2013 year.

31. Upon information and belief, Regal continued manufacturing and selling products based on the Licensed Product and the Confidential Information.

32. However, Regal failed to continue to make the royalty payments due under the License Agreement.

33. On August 26, 2014, Patricia Hartman, the sole shareholder of Regal, withdrew as the statutory agent for Regal.

34. Upon information and belief, at about this time, Regal distributed all of its assets to Patricia Hartman ("Regal Distribution").

35. On February 18, 2015, as a result of Regal's failure to appoint a new statutory agent, the Ohio Secretary of State cancelled the articles of incorporation for Regal.

36. On information and belief, from at least 2014 through today, Jeff Hartman manufactures and sells products based on the Licensed Product and Confidential Information through PaulG Toys rather than through Regal (the party to the License Agreement).

### **COUNT I: BREACH OF THE LICENSE AGREEMENT**

37. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

38. Technology from Heaven and Regal entered into the License Agreement.

39. Technology from Heaven has fully performed under the License Agreement.

40. Regal has breached the License Agreement because, among other things, Regal has failed to pay the royalties due under the License Agreement.

41. As a direct and proximate result of Regal's failure to perform under the License Agreement, Technology from Heaven has suffered damages in an amount in excess of $75,000 because, among other things, Technology from Heaven has failed to receive royalties due under the License Agreement.

**COUNT II: BREACH OF THE NON-DISCLOSURE AGREEMENT**

42. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

43. Technology from Heaven and Jeff Hartman entered into the Non-Disclosure Agreement.

44. Hope for Homeless was an intended third-party beneficiary of the Non-Disclosure Agreement because the Non-Disclosure Agreement also protected the Confidential Information of Hope for Homeless Youth.

45. Technology from Heaven performed fully under the Non-Disclosure Agreement.

46. Jeff Hartman has breached the Non-Disclosure Agreement because, among other things, Jeff Hartman has disclosed the Confidential Information to third parties (such PaulG Toys) in violation of the Non-Disclosure Agreement.

47. As a direct and proximate result of Regal's failure to perform under the License Agreement, Plaintiffs have suffered damages in an amount in excess of $75,000 because, among other things, third parties such as PaulG Toys have used Plaintiffs' Confidential Information to manufacture and sells toys without paying Technology from Heaven royalties.

**COUNT III: INFRINGEMENT (DIRECT AND INDUCED) OF 961 PATENT**

48. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

49. PaulG Toys has infringed, and continues to infringe, literally or under the doctrine of equivalents, the claims of the 961 and 234 Patents. PaulG Toys' infringing activities in the United States and in this District include the development, manufacture, use, importation, sale,

and/or offer for sale of products which infringe the 961 and 234 Patents, including, but not limited to, the Force Flyer helicopters and drones.

50. Jeff Hartman has induced and continues to induce others to infringe the claim of the 961 and 234 Patents. Jeff Hartman has been aware of the 961 and 234 Patents since at least September 18, 2011. Despite such knowledge, Jeff Hartman actively provided, and continues to provide directions, information, and/or other materials encouraging others (including PaulG Toys) to use infringing products in a manner that infringes the 961 and 234 Patents, including but not limited to, the Force Flyer helicopters and drones. Jeff Hartman knew that the conduct he was inducing constituting infringement of the 961 and 234 Patents.

51. PaulG Toys and Jeff Hartman continue to willfully, wantonly, and deliberately infringe the 961 and 234 Patents in disregard of Plaintiffs' rights.

52. As a result, Plaintiffs are entitled to compensatory and enhanced/treble damages in an amount in excess of $75,000 under 35 USC § 284 and attorneys' fees under 35 USC § 285.

53. Furthermore, Plaintiffs have been irreparably injured by PaulG Toys and Jeff Hartman's infringing activities and will continue to be so irreparably injured unless PaulG Toys and Jeff Hartman's activities are enjoined by this Court. As a result, pursuant to 35 USC § 283, Plaintiffs are entitled to an injunction against further infringement.

## COUNT IV: MISAPPROPRIATION OF TRADE SECRETS

54. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

55. The Confidential Information is a trade secret because the Confidential Information is technical information that derives economic value from not being generally

8

known and not being readily ascertainable by other persons and Plaintiffs have made reasonable efforts to maintain the secrecy of the Confidential Information.

56. Moreover, the Confidential Information is a trade secret because, among other things, the Confidential Information is not known outside of Plaintiffs' businesses, Plaintiffs took steps to protect the Confidential Information (e.g., requiring Jeff Hartman to sign the Non-Disclosure Agreement), Plaintiffs expended time and effort to develop the Confidential Information, and others would have to take considerable time and information to acquire and duplicate the Confidential Information.

57. Jeff Hartman misappropriated the Confidential Information because (1) he acquired the Confidential Information by misrepresenting that he would maintain the secrecy of the Confidential Information and (2) he disclosed the Confidential Information after using improper means to acquire the Confidential Information.

58. PaulG Toys and Regal misappropriated the Confidential Information because (1) they acquired the Confidential Information from Jeff Hartman and knew or had reason to know that Hartman had acquired the Confidential Information by misrepresenting that he would maintain the secrecy of the Confidential Information and (2) they acquired the Confidential Information from Jeff Hartman and knew or had reason to know that Hartman was breaching his duty to maintain secrecy by providing the Confidential Information.

59. The misappropriation of Jeff Hartman, PaulG Toys, and Regal was willful, malicious, and in bad faith.

60. As a result, Plaintiffs are entitled to compensatory damages under R.C. § 1333.63(A), punitive/treble damages in an amount in excess of $75,000 under R.C. § 1333.63(B), and attorneys' fees under R.C. § 1333.64(C).

61. Furthermore, Plaintiffs have been irreparably injured by Jeff Hartman, PaulG Toys, and Regal's misappropriation and will continue to be so damaged and irreparably injured unless Jeff Hartman, PaulG Toys, and Regal's misappropriation is enjoined by this Court. As a result, pursuant to R.C. § 1336.62, Plaintiffs are entitled to an injunction against further misappropriation.

## COUNT V: UNJUST ENRICHMENT

62. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

63. In the alternative, by using Plaintiffs' Confidential Information to manufacture and sell toys, Jeff Hartman, PaulG Toys, Patricia Hartman and Regal have obtained a benefit from Plaintiffs.

64. Jeff Hartman, PaulG Toys, Patricia Hartman and Regal were aware of this benefit.

65. Because Plaintiffs have not been fully compensated for the use of the Confidential Information, Jeff Hartman, PaulG Toys, Patricia Hartman and Regal's retention of the benefit of the use of the Confidential Information without payment to Plaintiffs would be unjust.

## COUNT VI: TORTIOUS INTERFERENCE WITH CONTRACT

66. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

67. As noted above, Technology from Heaven and Regal entered into the License Agreement.

68. Jeff Hartman, as the individual that executed the License Agreement on behalf of Regal, had knowledge of the License Agreement.

69. Jeff Hartman procured Regal's breach of the License Agreement by preventing Regal from paying royalties.

70. Jeff Hartman had no justification for procuring the breach of the License Agreement, and Technology from Heaven had been damaged in an amount in excess of $75,000 by the breach of the License Agreement because, among other things, Technology from Heaven has not received all the royalties due under the License Agreement.

### **COUNT VII: FRAUDULENT TRANSFER (R.C. § 1336.01 Et Seq.)**

71. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

72. Plaintiffs' right to payment for the causes of action against Regal alleged herein constitute "claims" as that term is defined in section 1336.01(C) of the Ohio Revised Code.

73. Since Plaintiffs, at all relevant times, had "claims" against Regal, Plaintiffs were a "creditor" of Regal, as that term is defined in section 1336.01(D) of the Ohio Revised Code.

74. Regal Distribution constituted "transfers," as that term is defined in section 1336.01(L) of the Ohio Revised Code.

75. Upon information and belief, the Regal Distribution was fraudulent as to Plaintiffs under R.C. § 1336.04(A)(1) because the Regal Distribution was done with the actual intent to hinder, delay, or defraud Plaintiffs. Upon information and belief, the Regal Distribution was, among other things, a transfer to an insider, the Regal Distribution constituted substantially all of the assets of Regal, Regal did not receive reasonably equivalent value for the Regal Distribution, and the Regal Distribution rendered Regal insolvent.

76. Upon information and belief, the Regal Distribution was fraudulent as to Plaintiffs under R.C. § 1336.04(A)(2) because Regal did not receive reasonably equivalent value for the

Regal Distribution and Regal was engaged or was about to engage in a business or a transaction for which the remaining assets of Regal were unreasonably small in relation to the business or transaction and/or Regal intended to incur, or believed or reasonably should have believed that Regal would incur, debts beyond Regal's ability to pay as they became due.

77. Upon information and belief, the Regal Distribution was fraudulent as to Plaintiffs under R.C. § 1336.05(A) because Plaintiffs' claims arose before the Regal Distribution and Regal did not receive reasonably equivalent value for the Regal Distribution and Regal became insolvent as a result of the Regal Distribution.

78. As a result of the Regal Distribution, Plaintiff is entitled to relief under R.C. § 1336.01 *et seq.*, including, without limitation, to a judgment against Patricia Hartman for the value of the Regal Distribution under R.C. § 1336.08(B)

## COUNT VIII: SHAREHOLDER LIABILITY FOR DISTRIBUTIONS

79. Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs.

80. Regal, a dissolved corporation, distributed its assets to Patricia Hartman through the Regal Distribution.

81. Under Ohio common law and R.C. § 1701.883, claims against the corporate assets of a dissolved corporation may be pursued against former shareholders to the extent of the assets actually distributed to them.

82. Therefore, Patricia Hartman is liable to Plaintiffs for Plaintiffs' claims against Regal to the extent of the Regal Distribution.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that judgment be granted against the Defendants as follows:

a. On Count I, against Regal, for compensatory damages, in an amount to be specifically proven at trial, but in excess of $75,000;
b. On Count II, against Jeff Hartman, for compensatory damages, in an amount to be specifically proven at trial, but in excess of $75,000;
c. On Count III, against Jeff Hartman and PauG Toys, jointly and severally, for compensatory and enhanced/treble damages, in an amount to be specifically proven at trial, but in excess of $75,000;
d. On Count IV, against Jeff Hartman, Regal, and PauG Toys, jointly and severally, for compensatory and punitive/treble damages, in an amount to be specifically proven at trial, but in excess of $75,000;
e. On Count V, against Jeff Hartman, Regal, Patricia Hartman, and PauG Toys, jointly and severally, for compensatory damages, in an amount to be specifically proven at trial, but in excess of $75,000;
f. On Count VI, against Jeff Hartman, for compensatory damages, in an amount to be specifically proven at trial, but in excess of $75,000;
g. On Count VII, against Patricia Hartman, for compensatory damages, in an amount to be specifically proven at trial, but in excess of $75,000;
h. On Count VIII, against Patricia Hartman, for compensatory damages, in an amount to be specifically proven at trial, but in excess of $75,000;
i. Punitive damages, against the Defendants, jointly and severally, in an amount to be proven a trial, but reasonably believed to be in excess of $75,000;
j. Injunctive relief precluding the Defendants from continuing to infringe on Patents 961 and 234;
k. Costs and expenses, including reasonable attorneys' fees;
l. Pre- and post-judgment interest;
m. Any other relief, at law or in equity, that the Court deems just and equitable.

Respectfully submitted,

/s/ Rick L. Ashton
Rick L. Ashton, Trial Counsel        (0077768)
Jeffrey R. Corcoran, Of Counsel      (0088222)
Douglas L. Hertlein, Of Counsel      (0040267)
ALLEN KUEHNLE STOVALL & NEUMAN LLP
17 South High Street, Suite 1220
Columbus, Ohio 43215
T:  (614) 221-8500
F:  (614) 221-5988
Email: ashton@aksnlaw.com
       corcoran@aksnlaw.com
       hertlein@aksnlaw.com
*Counsel for Plaintiff Technology from Heaven Unlimited and Hope for Homeless Youth*

## **JURY DEMAND**

Plaintiffs, through their counsel, hereby demand a trial by jury on all issues so triable.

/s/ Rick L. Ashton
Rick L. Ashton